<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                      :
LATCHMIE TOOLASPRASHAD,               :          Civil No. 07-5860 (RBK)
                                      :
            Plaintiff,                :
                                      :
      v.                              :          **<u>OPINION</u>**
                                      :
JAMES WILLIAMS, et al.,               :
                                      :
            Defendants.               :
_____:

**APPEARANCES:**

        LATCHMIE TOOLASPRASHAD, #10975-056
        F.C.I. Fort Dix
        P.O. Box 7000
        Fort Dix, New Jersey  08640
        Plaintiff <u>Pro</u> <u>Se</u>

**KUGLER**, District Judge

        Latchmie Toolasprashad, a federal prisoner currently confined at F.C.I. Fort Dix,

submitted to the Clerk for filing a <u>pro se</u> Complaint with an application to proceed <u>in forma</u>

<u>pauperis</u> pursuant to 28 U.S.C. § 1915.  By Order entered January 11, 2008, this Court denied

Plaintiff's application to proceed <u>in forma pauperis</u> with prejudice because Plaintiff is barred

from proceeding without prepayment of the filing fee, pursuant to 28 U.S.C. § 1915(g), since

while incarcerated, Plaintiff has had at least three prior civil actions and/or appeals dismissed by

a court of the United States on the grounds that it was frivolous, malicious, or failed to state a

claim upon which relief may be granted, and the facts alleged in the Complaint do not show that

Plaintiff is under imminent danger of serious physical injury.  After Plaintiff paid the $350.00

filing fee, this Court dismissed the Complaint without prejudice to the filing of an amended complaint.  The Opinion explained that dismissal was warranted because the Complaint did not comply with the mandate of Rule 8 to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and make "[e]ach allegation . . . simple, concise and direct." Fed. R. Civ. P. 8(a)(2) and (d)(1).  The dismissal was without prejudice to the filing of an amended complaint which complies with Rule 8, as well as Rule 20(a)(2), limiting the joinder of defendants and Rule 18(a), governing the joinder of claims.

Plaintiff thereafter filed an Amended Complaint [docket entry #8], an Amendment to Amended Complaint [docket entry #11], and a motion to supplement and correct Amended Complaint [docket entry #12].  This Court will grant the motion to supplement and correct the Amended Complaint and, as required by 28 U.S.C. § 1915A(b), will dismiss the Amended Complaint, as amended by docket entries 11 and 12, without prejudice to the filing of a second amended complaint as explained below.

## I.  LEGAL STANDARD

The Court is required, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. § 1915A.  The Court must sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

A complaint "must contain (1) a short and plain statement of the grounds of the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . ."  Fed. R. Civ. P. 8(a).  Also, "[e]ach

2

allegation must be simple, concise, and direct.  No technical form is required." Fed. R. Civ. P.

8(d).  A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations

describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see

also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  The standard for failure to state a claim,

in view of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), is as follows:

> The Supreme Court's Twombly formulation of the pleading
> standard can be summed up thus: stating . . . a claim requires a
> complaint with enough factual matter (taken as true) to suggest the
> required element.  This does not impose a probability requirement
> at the pleading state, but instead simply calls for enough facts to
> raise a reasonable expectation that discovery will reveal evidence
> of the necessary element.

Phillips v. County of Allegheny, 515 F. 3d 224, 235 (3d Cir. 2008).

The Court is mindful that the sufficiency of this pro se pleading must be construed

liberally in favor of the plaintiff, even after Twombly.  See Erickson v. Pardus, 127 S. Ct. 2197,

2200 (2007).  Moreover, a court should not dismiss a complaint with prejudice without granting

leave to amend, unless it finds bad faith, undue delay, prejudice or futility.  See Grayson v.

Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113,

117 (3d Cir. 2000).

## II.  BACKGROUND

Plaintiff's original Complaint named 10 prison officials as defendants, plus an

unspecified number of "John and Jane Does," consisted of 42 pages and 142 paragraphs, and set

forth a confusing series of seven narratives.  Although the Amended Complaint adds four new

defendants and sets forth eight narratives, it has fewer pages and fewer paragraphs than the

original, i.e., it consists of 23 pages and 114 paragraphs.  Assuming *arguendo* that the Amended Complaint is not inconsistent with Rule 8, this Court will briefly outline the factual allegations.

The first narrative of the Amended Complaint is entitled "PLAINTIFF WAS RETALIATORY TRANSFERRED IN A WELL ORCHESTRATED CONSPIRACY FOR FIRST AMENDMENT PROTECTED ACTIVITIES."  (Docket entry #8, p. 3.)  In these 18-paragraphs, Plaintiff asserts that, since 2003, defendants repeatedly told him to stop helping other prisoners with their grievances; on one occasion defendants Williams and Hamel (counselors) allegedly said that they would transfer Plaintiff "at the first opportunity available" if he didn't stop helping prisoners.  (Id.)  Plaintiff asserts that on March 21, 2007, defendants transferred him from the West Compound of FCI Fort Dix to the East Compound in retaliation for helping other prisoners present grievances.  Plaintiff alleges that defendant McKinnon (unit manager) even mentioned that McKinnon was "finally getting rid" of Plaintiff and "there will be no more paperwork." (Id. at p. 4.)  Plaintiff asserts that on April 2, 2007, Plaintiff was transferred back to the West Compound immediately after he complained in person to then-warden Samuels about the "unethical conspiracy and retaliation and adverse acts perpetrated by the identified defendants."  (Id.)  Even so, Plaintiff states that he pursued the three-step administrative remedy process regarding the transfer because Samuels failed to take corrective actions against defendants for their retaliatory action.

The second chapter, consisting of two pages, is entitled "DEFENDANTS KNOWINGLY, INTENTIONALLY, WILLFULLY, WITH MALICE WITHHELD COURT MAIL FROM CHAMBERS OF A FEDERAL JUDGE TO OBSTRUCT FURTHER, HINDER AND OUTRIGHT DENY ACCESS TO THE COURT."  Plaintiff asserts that on March 1, 2007, at

4

11:00 a.m, defendants received mail addressed to Plaintiff from the chambers of an unspecified federal judge.  Plaintiff maintains that, although BOP policy requires legal mail to be delivered to inmates within 24 hours of receipt, he did not receive the legal mail within 24 hours and he didn't even know that the mail had arrived until Williams mentioned it in passing on March 5, 2007.  Plaintiff asserts that, in retaliation for Plaintiff's activities in assisting other inmates, defendants did not give the letter to Plaintiff until May 3, 2007, 63 days after it was received and the day after Plaintiff filed an administrative remedy request.  Plaintiff asserts:

> Defendant Williams several times delayed delivery of the mail, refusing to give it to plaintiff by telling him to either return later, that he was too busy and plaintiff should return yet later, wherein the defendants would either be gone and/or their office door would be locked, a regular practice Samuels and May allowed, as the guards and defendants, such as Williams, Hamel, McKinnon and others were quick to say, "Samuels runs nothing but his mouth."

(Docket entry #8, p. 6.)

Plaintiff asserts that in his response to the administrative remedy request, then-warden Samuels "failed to address the issues raised and made false statements while covering up the ineptitude and malicious and deliberate delay perpetrated by his staff."  (Id. at p. 7.)

The third chapter is entitled "DEFENDANTS CONSPIRED AGAINST PLAINTIFF BY DENYING HIM CONSULTING EXPERT TO ASSIST WITH PREPARATION FOR HIS PAROLE HEARING."  (Id., p. 8.)  Plaintiff asserts that "[f]or plaintiff's parole hearings which were conducted on June 5, 2006 and May 7, 2008, defendants . . . interfered with plaintiff's due process by denying him timely access to official and legitimate visitation with James Hilkey, PhD, [a retired forensic psychologist,] to aid in preparation of his parole presentation, actions taken in retaliation and violating policies and procedures on visitation."  (Id., p. 8.)  Plaintiff

5

maintains that, although he "diligently tried since mid-2005 in order to get Dr Hilkey approved in order to aid in his parole preparation," Hilkey did not visit Plaintiff until June 2, 2006, three days before the 2006 parole hearing.  Plaintiff pursued the administrative remedy process regarding this claim, and administrative relief was denied.

The fourth and fifth chapters concern Plaintiff's parole hearings in 2000, 2001, 2003, 2004 and 2006, and defendants' alleged obstruction of his parole hearing preparation.  The fourth narrative is entitled "DEFENDANTS WILLFULLY, INTENTIONALLY, KNOWINGLY, MALICIOUSLY CONSPIRED WITH ONE ANOTHER TO DENY PLAINTIFF DUE PROCESS, FAMILY MEMBERS, EMBASSY OFFICIALS, AND PRISON STAFF MEMBER AT HIS PAROLE HEARING," and the fifth chapter is entitled "DEFENDANTS WILLFULLY, INTENTIONALLY, KNOWINGLY, MALICIOUSLY OBSTRUCTED AND CONSPIRED TO CAUSE PLAINTIFF IRREPARABLE INJURY BY SABOTAGING HIS PAROLE AND RETALIATED AGAINST HIM."  (Docket entry #8, pp. 9, 14.)

The sixth chapter is entitled "DEFENDANT DIAZ-N'DIAYE HAS RETALIATED AGAINST PLAINTIFF FOR FILING GRIEVANCES AGAINST HER, OBSTRUCTED, AND OUTRIGHT USED HER POSITION AND INFLUENCE AS AN ABUSIVE GUARD TO PREJUDICE PLAINTIFF."  (Docket entry #8, p. 17.)  Plaintiff asserts that in 2001 Diaz-N'Diaye falsely advised personnel at Georgetown University that Plaintiff was not available to call Professor Steven Goldblatt; in 2001, she refused to process his grievances; in 2001, she stated in front of other prisoners that she didn't think Plaintiff "likes women;" in 2001, Plaintiff pursued administrative relief against Diaz-N'Diaya but officials covered-up for her.

6

The seventh chapter is entitled "DEFENDANTS MCFARLAND, GRONDOLSKY, HUDGINS, HEFFRON, WHRITENOUR AND OTHER GUARDS/DEFENDANTS SYSTEMATICALLY MUZZLED PLAINTIFF'S FIRST AMENDMENT 'WRITTEN' FREE SPEECH." (Docket entry #8, p. 18.  Plaintiff asserts that these defendants have repeatedly muzzled him by rejecting his properly filed administrative remedy requests "merely because they do not like the choice of words used to describe the on-going corruption, retaliation, conspiracy, and to detail how plaintiff has been treated by defendants."  (Id., p. 20.)

The final chapter is entitled "DEFENDANTS GRONDOLSKY, MCFARLAND, HEFFRON, HUDGINS, WHRITENOUR, AND OTHERS REMOVED PLAINTIFF FROM HIS WORK ASSIGNMENT BECAUSE OF THE FIRST AMENDMENT ACTIVITY IN THIS COMPLAINT, BLATANT RETALIATION."  (Docket entry #8, p. 21.)  Plaintiff asserts that in 2008 defendants removed him from the food service job he had performed for six years, and placed him in the landscaping detail, despite his medically documented sinus problem.  "On May 2, 2008, plaintiff reported to the Gardening/Landscaping job and within an hour of being around the grass being cut, his nose began bleeding; however plaintiff was able to get his job changed to a janitor in the housing unit, a reduction in pay . . . as further punitive and retaliatory measures."  (Id., p. 22.)  Plaintiff asserts that he pursued the administrative remedy process regarding this matter without success.

Plaintiff sets forth the following as a Conclusion to the Amended Complaint:

> Defendants have acted in concert to cause plaintiff irreparable
> injury through a networking of obstructing and retaliation, ie.,
> retaliatory transfer; interfering with legal mail process and access
> to the courts; interfering with parole preparation such as legal visit
> and consulting expert; denial due process, family members,

> embassy officials, prison staff at his parole hearings; muzzling of
> first amendment written speech; retaliatory job firing for utilizing
> the administrative remedy and communicating with public
> officials; and a host of other violations - all taken in retaliation for
> plaintiff's exercising his first amendment rights to seek redress.

(Id., pp. 23-24.  For relief, Plaintiff seeks compensatory and punitive damages, injunctive relief.

(Id., p. 24.)

### III.  DISCUSSION

In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001).[1]  To state a claim for damages under Bivens, a plaintiff must show that federal officers violated or caused violation of his constitutional rights. Id.

A. Retaliation

An official who retaliates against an inmate for exercising his constitutional rights may be liable under § 1983.  See Rauser v. Horn, 241 F. 3d 330, 333 (3d Cir. 2001).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F. 3d 523, 530 (3d Cir. 2003) (internal

---

[1] In Bivens, the Supreme Court found an implied damages remedy available under the Fourth Amendment.  Bivens, 403 U.S. at 397.  The Supreme Court has recognized an implied damages remedy under the Due Process clause of the Fifth Amendment.  Davis v. Passman, 442 U.S. 228 (1979).

quotation marks and citations omitted).  To establish a causal link, the prisoner must show that

the "constitutionally protected conduct was 'a substantial or motivating factor'" in the decision to

take adverse action.  Rauser, 341 F. 3d at 333-34 (quoting Mount Healthy City School Dist. Bd.

of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  However, "once a prisoner has demonstrated that

his exercise of a constitutional right was a substantial or motivating factor in the challenged

decision, the prison officials may still prevail by proving that they would have made the same

decision absent the protected conduct for reasons reasonably related to legitimate penological

interest." Rauser, 241 F. 3d at 334; see also Carter v. McGrady, 292 F. 3d 152, 154 (3d Cir.

2002) (retaliation claim fails where prison officials would have disciplined inmate for policy

violations notwithstanding his protected activity).

        In this case, Plaintiff complains that defendants took several actions to retaliate for his

frequent assistance to fellow prisoners in filing administrative remedies and otherwise exposing

the corruption at FCI Fort Dix.  The problem with this claim is that prisoners do not possess a

First Amendment right to provide legal assistance to fellow inmates.  See Shaw v. Murphy, 532

U.S. 223, 225 (2001).  In Shaw, prison officials disciplined prisoner Murphy for violations of

prison rules prohibiting insolence and interference with due process hearings, based on a letter

Murphy sent providing assistance to a prisoner charged with assaulting a corrections officer.  The

Supreme Court reversed the Ninth Circuit's holding that "inmates have a First Amendment right

to assist other inmates with their legal claims."  Id. at 227 (quoting 195 F. 3d 1121, 1124 (1999)).

The Court explained,

                [T]he constitutional rights that prisoners possess are more limited
                in scope than the constitutional rights held by individuals in society
                at large.  In the First Amendment context, for instance, some rights

9

> are simply inconsistent with the status of a prisoner or with the
> legitimate penological objectives of the corrections system."
>
>         *             *             *
>
> Augmenting First Amendment protection for inmate legal advice
> would undermine prison officials' ability to address the complex
> and intractable problems of prison administration.  Although
> supervised inmate legal assistance programs may serve valuable
> ends, it is "indisputable" that inmate law clerks "are sometimes a
> menace to prison discipline" and that prisoners have an
> "acknowledged propensity . . . to abuse both the giving and the
> seeking of [legal] assistance."  Johnson v. Avery, 393 U.S. 483,
> 488 . . . (1969) . . . .  The legal text also could be an excuse for
> making clearly inappropriate comments, which may be expected to
> circulate among prisoners, despite prison measures to screen
> individual inmates or officers from the remarks.

Shaw, 532 U.S. at 229, 231 (citations and internal quotation marks omitted).

According to the Amended Complaint, the alleged protected activity on which each

retaliation claim is based, is Plaintiff's provision of assistance to fellow inmates.  Because

Plaintiff has no First Amendment right to assist inmates, his allegations do not satisfy the

"protected activity" requirement and the retaliation claims fail as a matter of law.

To the extent that Plaintiff asserts that the constitutionally protected conduct is the

pursuit of the administrative remedy process in his own behalf, the retaliation claims fail

because the alleged retaliatory actions were not sufficiently adverse and because prison officials

acted in furtherance of at least one legitimate governmental interest.  Plaintiff complains that he

was transferred for 12 days from the West Compound to the East Compound, but "transfer from

one prison to another prison cannot rise to the level of an adverse action because it would not

deter a person of ordinary firmness from the exercise of his First Amendment rights."  Smith v.

Yarrow, 78 Fed. App'x 529, 543 (6th Cir. 2003) (citations and internal quotation marks omitted).

Although the Court of Appeals determined in Siggers-El v. Barlow, 412 F. 3d 693, 704 (6th Cir. 2005), that a prison transfer that causes an inmate to lose a job which pays for his attorney and causes him to lose access to his attorney, can be an adverse action, Plaintiff's transfer from the West to the East Compound of FCI Fort Dix for 12 days did not deprive him of access to an attorney or otherwise interfere with his ability to access courts.  Thus, Plaintiff's retaliation claim regarding the 12-day transfer fails because it does not  constitute an adverse action that would deter a prisoner of ordinary firmness from exercising his First Amendment rights.  See Hix .v Tennessee Dep't of Corrections, 196 Fed. App'x 350, 358 (6th Cir. 2006) (affirming dismissal of § 1983 claim that inmate was transferred in retaliation for grievances because transfer was not adverse action).

Similarly, Plaintiff complains that defendants retaliated by delaying the delivery of an incoming letter from the chambers of a federal judge for 63 days, delaying the visit from forensic psychologist James Hilkey until three days before Plaintiff's June 5, 2006, parole hearing, and by transferring him from a food service job to a landscaping job for one hour.  However, nothing in the Amended Complaint insinuates that Plaintiff was harmed in any way by the delays in receipt of the letter or the visit from Hilkey.  Although Plaintiff complains that defendants transferred him to the landscaping job, even though his medical records showed that he suffered from sinus problems, he also states that "within an hour of being around the grass being cut, his nose began bleeding; however, plaintiff was able to get his job changed to a janitor in the housing unit." (Docket entry #8, p. 22.)  Transfer to a landscaping job for one hour could hardly be classified as adverse action; transfer to the janitor job was not retaliatory, since it was Plaintiff himself who obtained this job change.  Finally, Plaintiff's numerous and repeated complaints to BOP officials,

11

as well as his repeated invocation of the judicial process, show that he has not been deterred from exercising his First Amendment rights.  See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996).  Thus, Plaintiff's retaliation claims fail.

B.  Access to Courts

To the extent that Plaintiff seeks to raise access to courts claims based on the above-described conduct, the claims will be dismissed for lack of standing.  To establish standing for an access to courts claim, prisoners must assert "(1) that they suffered an actual injury - that they lost a chance to pursue a nonfrivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit."  Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir. 2008) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)) (internal quotation marks omitted).  Moreover, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  Monroe at 205-206 (quoting Christopher at 416-17).  Because Plaintiff fails to specify causes of action lost, to demonstrate that the lost causes were non-frivolous, and to show that he has no other remedy to compensate him for his lost claims, Plaintiff has not asserted an access to courts claim.  See Gibson v. Superintendent of N.J. Dep't of Law & Public Safety-Div. of State Police, 411 F. 3d 427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost); Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir. 1997) (dismissing prisoner's claim that corrections officers opened his outgoing legal mail because the prisoner suffered no actual injury as a result of the alleged interference with his outgoing legal mail, where his papers arrived and the court adjudicated his claim).  Thus, the access to courts claims will be dismissed for lack of standing.  However,

12

because Plaintiff may have inadvertently omitted facts that would show standing, the dismissal is without prejudice to the filing of a second amended complaint satisfying the standing requirements for an access to courts claim.

C.  Failure to Properly Respond to Administrative Remedy Requests

Plaintiff complains that BOP officials denied some administrative remedy requests on procedural grounds, without reaching the merits, and otherwise obstructed his right to petition the government for redress of grievances.  To the extent that Plaintiff seeks to assert a due process claim based on the failure to respond to and correctly process his administrative remedies, this claim fails.  The Due Process Clause does not require the government to follow its own regulations, procedures or laws if there is no underlying liberty or property interest. "Prisoners do not have a constitutional right to prison grievance procedures.  Thus, defendants' alleged obstruction of such procedures is not independently actionable."   Heleva v. Kramer, 214 Fed. Appx. 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F. 3d 641, 647 (7th Cir. 2001)); Pressley v. Johnson, 268 Fed. App'x. 181, 184 (3d Cir. 2008) ("Pressley also complained about the investigation and processing of his inmate grievances.  Because there is no due process right to a prison grievance procedure, Pressley's allegations did not give rise to a Fourteenth Amendment violation"); Stringer v. Bureau of Prisons, 145 Fed. App'x. 751, 753 (3d Cir. 2005). "Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . .  The [government] may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice [it] does not create an independent substantive right."   Olim v. Wakinekona, 461 U.S. 238, 250-251 (1983); see also Hewitt v. Helms, 459 U.S. 460, 469 (1983)

13

("we have never held that statutes and regulations governing daily operation of a prison system conferred any liberty interest in and of themselves").  Accordingly, inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause.  <u>Antonelli</u>, 81 F.3d at 1430; <u>Buckley v. Barlow</u>, 997 F. 2d 494, 495 (8th Cir. 1993) (per curiam); <u>Mann v. Adams</u>, 855 F. 2d 639 (9th Cir.) (per curiam), <u>cert. denied</u>, 488 U.S. 898 (1988). Thus, defendants' failure to properly address and process Plaintiff's administrative remedies is not actionable under <u>Bivens</u>.

D.  Interference with Parole Hearing Preparation

Plaintiff complains in chapters three, four, and five that defendants interfered with his preparation for parole hearings and otherwise sabotaged his ability to adequately present his case, with respect to parole hearings in 2003, 2004 and 2006.  These claims will be dismissed with prejudice, as Plaintiff has raised them in prior proceedings and at least two courts rejected them on the merits.  <u>See</u> <u>Toolasprashad v. Grondolsky</u>, 570 F. Supp. 2d 610, 623-629 (D.N.J. 2008); <u>Toolasprashad v. Bureau of Prisons</u>, 2007 WL 842930 (D. D.C. Mar. 19, 2007).

## IV.  CONCLUSION

This Court will dismiss the Amended Complaint.  However, because it is conceivable that Plaintiff omitted relevant factual allegations from the Amended Complaint or this Court misinterpreted Plaintiff's allegations, the Court will grant Plaintiff 30 days to file a second amended complaint stating a cognizable access to courts claim.

  s/Robert B. Kugler
**ROBERT B. KUGLER, U.S.D.J.**

Dated:   April 28  , 2009

14